No. 92-192

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF
CYNTHIA A. FRYDENLUND,

       Petitioner and Appellant,

  and

MERLIN C. FRYDENLUND,

       Respondent and Respondent.

APPEAL FROM:   District Court of the Ninth Judicial District,
             In and for the County of Toole,
             The Honorable R.D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

       David F. Stufft, Attorney at Law, Cut Bank, Montana

       For Respondent:

       Robert G. Olson; Frisbee, Moore & Olson, Cut Bank,
       Montana

FILED

DEC 15 1992

Filed:

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  October 14, 1992

Decided:  December 15, 1992

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Cynthia Frydenlund appeals from an order of the Ninth Judicial District Court, Toole County, designating respondent Merlin Frydenlund as primary physical custodian of the parties' two youngest children. We reverse.

The sole issue on appeal is whether the District Court erred by applying the "best interest" standard contained in § 40-4-212, MCA.

The parties' marriage was dissolved on June 20, 1985. The District Court awarded Merlin and Cynthia (Cindy) joint custody of their three children, Tiffany, Travis and Tennile, and designated Cindy as the physical custodian. Merlin has enjoyed liberal visitation since the dissolution.

On January 29, 1992, Merlin moved to modify the joint custody award, requesting that the court dissolve joint custody and award him sole custody of Travis, age 11, and Tennile, age 9; he also requested that Tiffany, age 15, be allowed to reside with the parent of her choice. The motion alleged that the children's circumstances had changed since the decree and that their physical, mental, moral or emotional health was seriously endangered. In his supporting affidavit, Merlin claimed that the children's desire to live with him, Cindy's unstable home, an incident of physical abuse to Tiffany, and the children's adjustment to his household supported his motion.

The District Court heard testimony from numerous witnesses and interviewed Travis and Tennile in camera. The testimony generally

2

established that both parents were fit, caring and loving, and that the children were polite and well-adjusted. After Merlin's case in chief, and again at the close of testimony, the District Court expressed its intention to use the best interest standard in considering Merlin's motion. In response, Cindy's counsel argued that § 40-4-219, MCA, and more specifically--given Merlin's motion and testimony--the serious endangerment standard contained therein, applied rather than the best interest standard announced by the court. In closing argument and rebuttal, Merlin's counsel argued that the children's present environment with their mother seriously endangered their mental or emotional health.

Did the District Court err by applying the "best interest" standard contained in § 40-4-212, MCA?

Cindy argues that the District Court erred as a matter of law in concluding that § 40-4-212, MCA, rather than § 40-4-219, MCA, applied to the case before it. Our standard of review relating to conclusions of law is whether the district court's interpretation of the law is correct. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 603.

Insofar as is pertinent here, the District Court began by making the following finding of fact:

> 6. The Respondent only expressed at trial a desire for a change in primary custodian with reasonable rights of visitation, not sole custody. The Petitioner met this issue with testimony of her own.

Based on that finding, the District Court concluded that pursuant to Rule 15(b), M.R.Civ.P., the issue of modifying only the physical custody provisions of the joint custody decree was raised by the

3

express or implied consent of the parties at the hearing. As a result, the court concluded that the "serious endangerment" standard of § 40-4-219, MCA, did not apply, and that the proper test was the "best interest of the child" standard pursuant to § 40-4-212, MCA. The District Court modified the joint custody award by designating Merlin as the primary physical custodian of Travis and Tennile and allowing Tiffany to choose her residence. Cindy appeals.

Our analysis begins with the finding set forth above which forms the basis for the conclusions of law at issue. In reviewing a district court's finding of fact, we apply the clearly erroneous test, the first prong of which is whether the finding is supported by substantial evidence. Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. Our review of the record indicates a lack of substantial evidence to support the District Court's finding.

Merlin's original motion unequivocally requests that joint custody be dissolved and that he be awarded sole custody of Travis and Tennile on the basis that the children's present environment "seriously endangers their physical, mental, moral or emotional health. . . ." Thus, the motion clearly mirrors the requirements of § 40-4-219, MCA. Nor did Merlin relinquish his claim for sole custody at the hearing; he reinforced his commitment to sole custody with testimony such as the following:

> Q: Have you filed with this Court a motion to modify a prior custody order with respect to Travis and Tennile, to **give you sole custody of these children?**
> A: Yes, I have. [Emphasis added.]

4

The entire thrust of Merlin's case reveals his intent to seek sole custody pursuant to § 40-4-219, MCA. He further testified that:

> (1) Cindy is not mentally stable enough to provide for the needs of the children;
> (2) Cindy physically abused Tiffany in front of the younger children;
> (3) Cindy's younger boyfriend spends the night at her house, which he feels is not a good environment for the children; and
> (4) The children's strong desire to live with him would result in serious endangerment of their mental or emotional health if custody is not modified.

Finally, Merlin's counsel in closing argument continued to stress that the children's present environment with their mother seriously endangered their mental or emotional health, echoing the requirements of § 40-4-219, MCA.

The District Court's finding that Merlin "only expressed at trial a desire for a change in primary custodian with reasonable rights of visitation, not sole custody" is devoid of support in the record. Therefore, we conclude that the finding is clearly erroneous.

Based on this erroneous finding, the District Court concluded that the issue of modifying only the physical custody provisions of the joint custody decree was raised by express or implied consent of the parties at the hearing, citing Rule 15(b), M.R.Civ.P. That conclusion is erroneous as a matter of law. As discussed, Merlin himself did not "consent" to that issue. More importantly, even if Merlin had consented to revising the issue before the court, Cindy clearly did not do so. Indeed, Cindy's counsel reiterated objections to the court's use of the "best

5

interest" standard at every juncture. No consent of the parties exists in this case upon which the court properly could characterize the issue before it as one of modifying physical custody only. Therefore, the District Court's application of Rule 15(b), M.R.Civ.P., was in error.

The issue before the District Court was whether to dissolve joint custody and award sole custody of Travis and Tennile to Merlin. Montana law is clear that, where a joint custodian seeks to terminate joint custody and obtain sole custody, § 40-4-219, MCA, applies. See § 40-4-224(3), MCA; In re Marriage of Gahm (1986), 222 Mont. 300, 722 P.2d 1138; Keil v. Ferguson (1990), 246 Mont. 344, 805 P.2d 1334. Thus, the court erred in applying only the best interest standard of § 40-4-212, MCA.

Merlin argues, somewhat disingenuously given the posture of his case throughout the District Court proceedings, that the court merely modified physical custody of Travis and Tennile and, therefore, that it did not err in applying § 40-4-212, MCA. He directs our attention to a number of cases in which we have stated that modification of the physical custody provisions of a joint custody award, as opposed to termination of joint custody, is governed by § 40-4-212, MCA. Merlin's characterization of the cases is correct; however, the cases are distinguishable.

For example, in In re Marriage of Johnson (1989), 238 Mont. 153, 777 P.2d 305, the father moved to modify the physical custody provisions of the joint custody award. We focused on the nature of his motion and concluded that § 40-4-212, MCA, rather than § 40-4-

219, MCA, was applicable because the motion sought only a modification of physical custody. Id. at 156. Similarly, when a father petitioned the court for clarification of the physical custody arrangements of a joint custody award, we again affirmed the district court's application of the best interest standard of § 40-4-212, MCA. In re Custody of J.H. (1988), 231 Mont. 301, 303, 752 P.2d 194, 195. The moving parties in J.H. and Johnson did not actively seek dissolution of the joint custody and granting of sole custody as Merlin did in this case.

As discussed above, the case presented to the District Court, and the issue before it, was a motion to terminate joint custody and to award sole custody to Merlin. Rule 15(b), M.R.Civ.P., did not operate to alter or amend the issue. A district court's acts must be within the issues presented to the court. In re Custody of C.S.F. (1988), 232 Mont. 204, 209, 755 P.2d 578, 582 (citations omitted).

Finally, Merlin argues, under both the "serious endangerment" and the "integration" factors, that the requirements of § 40-4-219, MCA, were met. We decline to address this argument absent an opportunity for the District Court to do so first on the record before it.

Reversed and remanded for findings and decision pursuant to § 40-4-219, MCA.

_____
Justice

7

We concur:

_____
Chief Justice

_____

_____

_____
Justices

December 15, 1992

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


DAVID F. STUFFT
Attorney at Law
P.O. Box 1225
Cut Bank, MT 59427-1225

Robert G. Olson
FRISBEE, MOORE & OLSON
P.O. Box 547
Cut Bank, MT 59427


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy